### MAHER et al. v. LANDRETH.

Circuit Court of Appeals, Fifth Circuit.
December 2, 1927.

No. 5130.

Joint-stock companies and business trusts ⬅ 19—Transactions of trustee of common-law trust held, on the evidence, in good faith, and shareholders required to share losses as well as profits.

Transactions of defendant as active trustee of a common-law trust organized to buy and sell oil lands and leases, which on the whole resulted in large profits, *held*, on the evidence, to have been made in good faith, and shareholders *held* chargeable with their share of losses.

Appeal from the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Suit by A. C. Maher and others against E. A. Landreth. From a decree for defendant, complainants appeal. Affirmed.

A. E. Spencer, of Joplin, Mo., J. M. Wagstaff, of Abilene, Tex., and R. M. Sheppard, of Kansas City, Mo. (Wagstaff, Harwell & Wagstaff, of Abilene, Tex., on the brief), for appellants.

C. L. McCartney, of Brownwood, Tex., and Howard Gray, of Carthage, Mo. (McCartney, Foster & McGee, of Brownwood, Tex., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. A number of persons who reside in Joplin, Mo., raised a fund of $75,000, which in March of 1919 they intrusted to E. A. Landreth, to buy and sell, in his discretion, oil lands and leases in the state of Texas. The venture resulted in a dividend of 100 per cent. and some additional profits. Appellants contributed $33,250 to the fund, and brought this suit against Landreth, alleging that he had failed properly to account for all the profits.

The original plan called for the raising of $50,000 and the organization of a corporation of which Landreth would be manager, but without compensation until the profits should equal or exceed the amount contributed, after which he was to receive 12½ per cent. of the net profits. At Landreth's solicitation the additional $25,000 was raised, without specific reference to Landreth's compensation. The plan to organize a corporation was abandoned, and the subsequent activities were carried on under a common-law trust, called the Joplin Oil & Development Company, with Landreth as active trustee. Landreth proceeded to buy some leases, which in September following he sold to the Metex Corporation for $250,000 and a large block of the stock in the purchasing corporation.

Among the leases so transferred was the Roberts lease, in which Landreth purchased a fourth interest, which he paid for by borrowing from a bank upon his note as trustee. One-fourth of the profits from this lease amounted to $6,080. G. O. Bateman, G. S. Walker, and still another party had a fourth interest each in this lease. After the sale was made to the Metex Company, but before it had paid the cash consideration, it asked for an extension of time. Bateman

was opposed to granting such extension; but Landreth favored it, because he thought that by doing so the chances were better to effect a sale. Thereupon Landreth purchased the stock which Bateman had in the Metex Company for $11,343.45, and later purchased Walker's stock for $11,187.50, upon the belief that it was a good investment. Both purchases were made far below prices which had been paid by others for stock in that company, and later appellants refused to accept Landreth's offer to buy it at double its cost. It finally developed that this stock was practically worthless.

Landreth accepted employment from the Metex Company, and received $4,000 as salary prior to a meeting with the Joplin Company in December, 1919. At that meeting Landreth made a detailed report of his handling of the trust fund. He claimed that he was entitled to the profits on the fourth interest in the Roberts lease, because he had paid for it with his own money. He conceded that the Joplin Company was entitled to the $4,000 he had received as salary. The Joplin Company at that time received dividends equal to its investment, and waived any claim to profits on the Roberts lease or to the salary which Landreth had received. It was decided to wind up the affairs of the Joplin Company, and not to make any new investments; but Landreth was authorized to liquidate the remaining assets, among which was an indebtedness of the Metex Company of approximately $33,000 for equipment. Landreth collected this amount in October of 1920, and duly accounted for it. The only significance that item has is that it is made the basis of a claim for participation in large profits which Landreth made from investments made in April of 1920, in the Hale lease and in a waterworks system.

The District Court entered a decree in favor of appellants for $2,695.47, their portion of the profits on the Roberts lease, and found in favor of Landreth on the other transactions sued on. Landreth concedes that it was his duty to account for the salary received from the Metex Company, because his service belonged to the Joplin Company, but contended, and, as we think, the District Judge rightly held, that appellants waived any right to the salary and practically made a gift of it in their meeting of December, 1919. Complaint as to the loss on the Metex stock is in substance that the investment was not made in good faith, and was beyond the scope of the authority conferred upon Landreth. Bateman's stock was purchased in order to carry out the sale

to the Metex Company. The sale was consummated after the extension of time was granted, and it is problematical whether it would have been closed with the resulting large profits, if further time had been refused. Walker's stock was purchased at less than was being paid by others at that time.

Appellants did not complain at the December meeting of Landreth's acceptance of the large block of stock, but took their share, doubtless in the hope that further profits would be realized. It is strong evidence of Landreth's good faith that he offered to pay any of the appellants who had Bateman and Walker stock a profit of 100 per cent., and their refusal to sell it shows that they did not then consider that the original purchase had been made in bad faith. It is immaterial whether or not the original purchase was authorized by appellants, since, if it was not, by accepting it and refusing to sell it, they ratified such purchase. The prayer for accounting as to the Hale lease and the waterworks system was properly denied, since the evidence did not warrant the conclusion that the balance due to the Metex Company for equipment was used as a part of the purchase price. On the whole, the position of appellants seems to be that they are not chargeable with any losses, but are entitled to their share of all the profits Landreth made in highly speculative transactions. The evidence fails to sustain the charge that Landreth acted in bad faith toward his principals.

The decree is affirmed.